UTICA, August 1823.

F ·· rs
v.
FRETS.

New trial granted.

---

FRETS *against* FRETS, impleaded with FRETS.

DEBT. The 1st count was in the usual form, on a bond for the payment of money, dated *July* 15*th*, 1822, in the penal sum of $5000, and set forth no condition.

The 2d count was on a bond similar to the one described in the first count, with a condition, that if the defendants should abide, &c. the award, &c. of S. *Mitchell &* J. *Strong, &c.* and in case they could not agree, then of an umpire, &c. and with an agreement in the condition, that the

Where the first count of a declaration is, *in form,* upon a bond for the payment of money, though the bond may be, *in fact,* one for the performance of an award, a plea of revocation is a nullity.

And this, though it be joined in the same declaration with a count upon another bond in the same words, conditioned to perform an award.

Each count is in nature of a distinct declaration ; and must be answered as such ; and will not take its character from any other count in the same declaration, where it does not, in terms, refer to it.

A plea to a declaration on a bond, for performance of an award, that the defendant, by a writing sealed, *revoked* the powers of the arbitrators, need not aver notice to the arbitrators, or the opposite party. This is implied in the term *revoked.*

Nor is such a plea exceptionable, as attempting to put in issue matters of law.

The addition to such a plea, that the defendant also *revoked the bond,* is mere surplusage, and does not vitiate.

Though the instrument of revocation do not, *in terms,* declare that the party *revokes the submission ;* yet, if enough appears therein to shew an *intention to revoke,* it is sufficient.

Accordingly, where the parties had submitted to arbitration by bond, and two of them signed and sealed a revocation thus : " To *J. S. & S. M. (the arbitrators,)* and *E. F. (the opposite party.)* We, the subscribers, revoke. Take notice, that the arbitration bonds executed by us and you, dated, &c. (the true date,) referring certain disputes, &c. therein mentioned, between us and you, the said *E. F.* to you the said *J. S. & S. M.* as by reference, &c. In witness," &c. This was holden sufficiently certain as a revocation.

The same rules applied by the Judges in construing a revocation, as in construing a contract. The intention of the parties is to govern in both cases :

Not merely a literal or grammatical construction, which would often be absurd.

The prayer of a plea of revocation, in answer to a declaration setting forth a bond and award, may be in bar of the action. It need not be simply in bar of the award ;

Though, where the powers of the arbitrators are revoked, the penalty is forfeited, and the plaintiff may assign breaches, and have his actual damages assessed.

The plaintiff should assign the revocation as a breach—not the non-performance of the award.

Where a submission is made a rule of court, a revocation would be a contempt.

But though agreed to be made a rule of court, yet, until actually made so, it is revocable ; and the party, by revoking, is not placed in contempt.

submission and award might, by either party, be made a rule of this Court. It then stated, that the arbitrators made an award, by which they awarded that the defendants should pay, &c. and averred a breach. The 3d count was in debt for $3000, on an award of *J. S. & S. M.* upon submission by writings obligatory, with an agreement in the condition, that the submission and award might be made a rule of this Court. The 4th count was on a *mutuatus* for $1577,02.

*Plea*—to the first count, (*actio non*) because, &c. before, &c. the defendants did, by a certain writing, sealed with their seals, revoke and disannul the said bond or writing obligatory, executed by the defendants ; and all and singular, the powers given and granted by them in and by the said bond or writing obligatory, to the said *J. S. & S. M.* the arbitrators ; with a prayer of judgment, if the plaintiff thereof, &c. ought to have, &c. her action : To the 2d count, the same ; and to the 3d count, the same : To the 4th count, *nil debet.*

To the first plea, the plaintiff demurred, generally, and the defendant joined in demurrer. To the 2d and 3d pleas, the plaintiff first prayed that the bonds, &c. and the awards, &c. might be enrolled, and they were enrolled, *in hæc verba.* She also craved and had oyer of the revocation, which was set forth in these words : " To *J. S. & S. M.* and *E. Frets.* We the "subscribers revoke. Take notice, that the arbitration bonds "executed by us and you the aforesaid *E. F.* dated the 15*th* "day of *July,* 1822, referring certain disputes and differen- "ces therein mentioned between us and you, the said *E. Frets,* " to you the said *J. S. & S. M.* as by reference to the said "bonds, may more fully appear. In witness whereof," &c. Signed by *the defendants.* She then demurred specially, for the following causes : 1. That these pleas do not allege, that the revocation was served or delivered, or that notice there- of was given, either to the arbitrators or the plaintiff. 2d. That they attempt to put in issue matter of law, by averring, that the defendants revoked, &c. whereas they should have shewn how, and in what manner the defendants so revoked, that the Court might judge whether it was a revocation in law, or not. 3. They aver that the defendants revoked, &c.

the bonds, &c. and the powers given thereby, &c. whereas they did not, and could not destroy the bonds, but only the powers. 4. The pretended revocations are insensible and void, and do not apply to the bonds, nor are they revocations of the bonds. 5. These pleas pray that the plaintiff be barred of her action, &c. whereas the matters therein set forth confess the plaintiff's right of recovery on the bonds, and are therefore inconsistent with that prayer. 6. The bonds being made a rule of Court, are irrevocable. 7. General defects.

The plaintiff then entered a *nolle prosequi*, as to the 4th count ; and

The defendant joined in demurrer.

*J. V. N. Yates*, in support of the demurrer. The count is on a bond for the payment of money. If, in fact, a bond of arbitration, the defendant should have availed himself of this by craving oyer of the bond and condition ; and then have pleaded the revocation.(a)

As to the 2d and 3d pleas, no doubt arbitration bonds may be so far revoked as to prevent the arbitrators from exercising any powers under them ; but the penalty of the bond is forfeited.(b) The right to revoke, may be called *summum jus*, and is not entitled to any favour or protection. It is an odious exercise of right, after submitting matters to judges of the party's own choosing, and putting the opposite party to expense and trouble. If a defendant will revoke a sealed instrument, let him look to it, that his revocation is equally clear, solemn and explicit. Unless the revocation pleaded be so, it cannot be construed in derogation of a prior existing right acquired by the bonds. The bond is a clear demand. Should not the revocation be equally clear? The question is, not what the defendants intended to do, but what have they in fact done ? Could any one, by reading the pretended revocation pronounce it one *in totidem verbis ?* If it be defective, it is not now the question whether a Court of Chancery might aid the defect, but what a Court of law is bound to pronounce upon it. The omission of the word *heirs*, in a deed of conveyance, prevents the passing of the

(a) Fort. 354, 5. Com. Dig. 622. (2. v. 4.) Ball v. Squarry, Mod. Cas. 237. 1 Saund. 317.

(b) 16 John. Rep. 205. Allen v. Watson,

UTICA,
August, 1823.

FRETS
v.
FRETS.

(c) Sav. 71.

(d) 1 Roll.
247, (E)
id. 246. (D)

(e) 2 Com.
Dig. Estoppel.
(f) 4 id. 83.
Co. Litt. 352.
b. 303, a. Pol-
lexf. 396.

(g) 16 John.
205.

(h) Roll.
331. 3 Keb.
475. Caldwell
on Arb. 36. 5
Taunt. 452. 1
Ch. Pl. new
ed. 388. See
old ed. 556.

(i) 7 Mod. 8.

(j) Caldwell
on Arb. 36. 5
Taunt. 452.

fee ; and it is no answer, that the Court of Chancery will supply such an omission. You cannot travel out of a written instrument for a meaning to be applied to words of known construction. Every word in the revocation has a clear meaning : There is no obscurity in them. But to make the instrument intelligible, you must transpose the words, which makes a new instrument. It is said, that words insensible shall be rejected.(c) And " if by the rejection of insensible words, no sense remains, then the whole is void."(d) If I am correct in saying that a revocation is not favoured by the law, it is in this respect like an estoppel, and subject to the same rules. None of the benign maxims of the law apply to estoppels.(e) They must be certain to every intent ; and must be directly and precisely alleged.(f)

For these reasons, I think the 4th cause of demurrer conclusive.

The 1st and 2d exceptions are merely formal, but a special demurrer is always predicated on form only.

I rely principally on the 3d, 5th and 6th causes. In Allen v. Watson,(g) no point was made as to the prayer of the plea. This should conform to the judgment to be pronounced upon it. Though the revocation be valid, yet there must be judgment for the plaintiff, for the penalty, which is forfeited by the revocation ; and the plaintiff is entitled to have her damages assessed.(h) The prayer of the plea ought, therefore, to have been in bar of the award—not in bar of the action.

As to the 6th cause : the bonds are, in terms, made a rule of this Court, and, of course, binding upon the parties. Can such a bond be revoked ? t is irrevocable.(i) The case of Allen v. Watson, had no such feature, and cannot apply. The party ought not to be permitted to revoke, without leave of the Court. Entering the rule is matter of form merely ; and the Court may intend this to have been done. In such a case, even if the powers of the arbitrators are revocable, they may proceed to make an award, and that is recoverable on the bond.(j)

At any rate, there must be judgment for the plaintiff, on the whole record. If the revocation is bad, the plaintiff

may assess his damages on the award : If good, he is entitled to assess his damages for not going to a hearing before the arbitrators.

*S. S. Lush*, contra. As to the 1st and 2d causes of demurrer, the plea alleges that the defendants revoked, &c. by a writing sealed, setting it forth. Every requisite of execution, delivery and notice is implied ;(*k*) and, that the revocation is set out, is a sufficient answer to the objection, that mere matter of law is attempted to be put in issue. The facts are fully exhibited. The 3d objection is, that we allege a revocation of the *bonds*. This is mere surplusage. We also allege a revocation of the *powers* of the arbitrators. This does not negate the defendants' liability to the *actual* damages of the plaintiff for the revocation, which are to be assessed by a jury, under the *Statute* of 8 and 9 *W.* 3.(*l*) Their liability extends no farther, which is admitted by the case of *Allen* v. *Watson*, cited for the plaintiff. As to the 4th objection : it is true, the instrument of revocation is not a very formal one, nor is there any rule requiring that it should be. The maxim is, *benigna facienda sunt interpretationes chartarum, ut res magis valeat quam pereat*. The instrument is under the hands and seals of the obligors, addressed to the arbitrators by name, declaring to, and giving them notice, that they, the subscribers, revoke the arbitration bonds, &c. It expresses every particular which is necessary to make it intelligible, and leaves no room for doubt as to its meaning. Fifthly : the prayer of the plea is right. It is, "*if the plaintiff ought to have or maintain her action thereof*," &c. It refers to the action, as brought upon the award ; and is, therefore, precisely what the plaintiff supposes it ought to be. Sixthly : it no where appears that the bonds were made a rule of Court. The stipulation that either party might make it so, was merely executory. It rested in agreement ; and was revocable for the same reasons, that the submission itself is so. Indeed, this objection is fully answered by the 7 of *East*, 608, cited on the other side.

The general demurrer might have been well taken, had there been but one count in the declaration. In the 2d and

(*k*) 16 *John.* 210.

(*l*) *Stat. sess.* 36, *ch.* 56, *s.* 7, 1 *R. L.* 518.

UTICA,
August, 1823.

FRETS
v.
FRETS.

(m) 1 Ch.
Pl. 397. 2 id.
41.

3d counts, the condition is set forth, and it is manifest that all the counts in the declaration are for the same subject matter. It is the established law, that one count may refer to another ; and thus be incorporated in it by a bare reference.(m)

SAVAGE, Ch. J. Each count in a declaration is supposed to contain a distinct cause of action ; and must, therefore, be answered by the defendants, or judgment may be entered thereupon by default. The defendants so consider these counts in their pleas. The first count is simply on a bond for the payment of money. The plea to that count pre-supposes that it is on a bond of submission to arbitrators, and sets up a revocation in bar. This, of course, is no answer. If the bond, described in the first count, be, in fact, the same as the one set forth in the second, and the defendant had wished to answer it, by this plea, his course was to have craved oyer, and spread the bond, with the condition, upon the record. This would have given application to the defence presented by the plea. As we find it upon the record, it is certainly no answer to the first count. The plaintiff is, therefore, entitled to judgment upon that count ; but I think it right that the defendants have leave to amend, on payment of costs.

The first ground of special demurrer to the 2d and 3d pleas, is directly answered by the case of *Allen* v. *Watson*, cited in the argument ; and the 2d ground is virtually answered by the same case. The matter excepted to, thirdly, is surplusage, and might be stricken out, without impairing the effect of the plea. The allegation that the defendants *revoked the bonds*, is void, and the revocation is left to operate upon the *powers of the arbitrators*.

The 4th cause supposes the instrument of revocation so utterly unintelligible as to fail altogether in the effect ascribed to it by the pleas. I am not satisfied that there is, as contended upon the argument, any reason for a greater strictness of interpretation in this case, than in the ordinary one of a contract between the parties. If the latter were left to be governed by the rules of syntax, it would, many times, be

UTICA,
August, 1823.

FRETS
v.
FRETS.

impossible to arrive at the real intention.(n)   Though this instrument be informal, and the defendants have failed to express their object according to grammatical rules ; yet, if an intention to revoke can be gathered from the entire deed, we must give it the same operation as if expressed in the plainest terms.(o)   It is averred, in the pleas, that, by this writing, the powers of the arbitrators were revoked ; and, knowing the relation in which the parties stood to each other, it is impossible not to see that such was the consequence intended by the defendants.   In this light it must have been viewed by the plaintiff and the arbitrators.   Their powers were effectually revoked, and their subsequent proceedings unauthorized and void.

But it is contended, fifthly, that the prayer of the plea should have been only in bar of the *award*—not the *action.* It is true that, by the revocation, the penalty of the bond is forfeited, and an action lies upon it to recover the damages actually sustained.   But the pleas answer the action, *as one brought upon the bond and award.*   The plaintiff should have assigned, for breach, the revocation itself, had she intended to avoid these pleas.   As she has not done so, but goes for the non-performance of the award, the plea is right. It is a full and perfect answer to an action resting, as this does, upon the validity of the supposed award : whereas, had the prayer been simply in bar of the award, it would have been bad, as professing to answer a part of the count only.

To the 6th cause, it was correctly answered, in argument, that nothing appears, shewing the submission to have been made a rule of Court.   Had the rule been entered, a revocation, afterwards, would have been a contempt of Court, for which the party would have been punished ; but, till made a rule, it is a mere agreement, in its nature revocable.(p)

I am, therefore, of opinion that the defendants are entitled to judgment on the 2d and 3d pleas, with leave to the plaintiff to amend, on the usual terms.

(n) 2 *Bl. Com.* 379.

(o) *Id.* 379, 80.   10 *Rep.* 133.   *Co. Litt.* 223.   1 *Bulstr.* 101.   *Arg.* 1 *P. Wms.* 457.   *Plowd.* 156.   *Arg.*

(p) 7 *East,* 612.

WOODWORTH, J.   The first count is on a bond for the payment of money.   Plea, that the defendants revoked and disannulled the bond, and all the powers granted to *Strong* and *Mitchell*, the arbitrators.   The demurrer is well taken to this plea.   It might have been treated as a nullity, had the plaintiff so elected.   It is more than probable the objection is *stricti juris*, and that, had the condition been set out, it would have contained a submission to arbitrators.   The defendants, however, have not chosen to crave oyer ; and, consequently, have not laid a foundation for giving effect to their plea.

The second count sets out a bond, with condition, submitting to arbitrators.   It recites an award, and avers performance.   The third count is on the award, setting out the bond of submission as inducement, and avers non-performance.

The defendants plead, separately, to the second count, a revocation of the bond and all powers granted by the same, before award made : to the third count, a like plea.   The plaintiff, after praying that the bonds, in the 2d and 3d counts, be enrolled, and craving oyer of the deed of revocation, demurs, specially, to the 2d and 3d pleas.   The first cause of demurrer is not well taken.   Notice of the revocation is implied in the fact, that it was revoked, prior to the making the award ; for, without notice, the deed would not have amounted to a revocation. (16 *John*. 210.)

I shall only notice the 3d, 4th, 5th and 6th causes, the others being frivolous, and not attempted to be supported.   The allegation, that the defendants revoked the bond, is, at most, only surplusage.   I consider it as intending no more than that the bond was revoked, so far as it delegated powers to the arbitrators.   The same objection was taken, in *Allen* v. *Watson*, (16 *John*. 205) and overruled.

The fourth cause rests on the ground, that the revocation is unintelligible, and does not apply to the bond.   By transposing the words, " take notice that," it will read, " we revoke the arbitration bonds executed by us."   A strict literal and grammatical construction would often be absurd, sometimes contradictory, and frequently unjust.   A liberal con-

sideration is to be had of the whole instrument, in relation to the subject matter, to discover what was the intention of the parties. In many cases, courts of justice have supplied words, transposed them, or considered them merely as surplusage.

In *Griffith* v. *Goodland*, (*Sir T. Raymond*, 464) the defendant covenanted with the plaintiff, his executors, &c. that he should have seven parts of all the grains, made in the defendant's brew-house, for a certain term. The breach assigned was, that the defendant had, with intent to deceive the plaintiff, put divers quantities of hops into the malt, of which the grains were made, by reason whereof they were spoiled. After verdict, there was a motion in arrest of judgment; but judgment was given for the plaintiff, because " the intention of the parties is to be considered, in all contracts, and it was the intent of the parties here, that the plaintiff should have the grains for the use of his cattle, and they will not eat them when hops are put into them." The defendant had, literally, performed his contract. He had not covenanted that he would not put hops into the malt. But the Court judged of the intent. They knew that the grains were intended for the plaintiff's cattle; and, therefore, concluded that mixing hops with the malt, which prevented the use, was against the spirit of the contract, and, therefore, a breach of the covenant.

The prayer, in the plea, is, " whether the plaintiff ought to maintain her action thereof," &c. I perceive no sufficient objection to this prayer; for, if the plea is good, the defendants are entitled to judgment on these pleadings. It is no answer to say, the bond still remains in force, on which the plaintiff may assign other breaches, and recover her actual damages: this is admitted. The effect of the judgment for the defendants will be in bar of the award only—the plea implies no more—so that the plaintiff may, notwithstanding, proceed to recover her actual damages.

As to the sixth cause, there seems to be a mistake, in point of fact. By the submission, " the award may, by either party, be made a rule of the Supreme Court." This was prospective merely. It does not appear that any rule

has ever been entered. It was competent for the defendants to revoke, at any time previous to the entry of the rule and making the award. In *Milne & others v. Gratrix*, (7 *East*, 608) Lord *Ellenborough* observes, "there is nothing in the statute to render a submission irrevocable, while it continues executory. The statute says, 'It shall and may be lawful, for parties to agree that their submission shall be made a rule of Court, which agreement, (that is, so long as it exists as an agreement, unrescinded) shall or may be entered of record.' After it is made a rule of Court, the party cannot, indeed, rescind it, without incurring a breach of that rule ; but, till then, it has its binding force as an agreement only, to submit to the award of the arbitrator, whose authority is, in its nature, revocable, and, for the breach of which agreement, the party has a remedy of another sort. Then, if, before any award made, one of the parties have revoked the authority of the arbitrators, they cannot make any award to bind him."

My conclusion is, that the plaintiff is entitled to judgment, on the demurrer to the first plea, and the defendants to judgment on the special demurrers.

SUTHERLAND, J. concurred.

Judgment accordingly.