(No. 15015.—Judgment reversed.)

LOUIS COCALIS, Appellee, *vs.* EUGENE NAZLIDES, Appellant.

*Opinion filed April 18, 1923.*

1. ARBITRATION—*submission of controversy was revocable at common law.* Arbitration by agreement of parties as a method of settling disputes was recognized at common law, and an award was enforceable by an action at law and in a proper case could be enforced by specific performance in equity, but equity would not specifically enforce an agreement to submit a controversy, and until an award was made the authority of the arbitrators was subject to revocation by either party, except when the reference to arbitrators was by a rule of court.

2. SAME—*statute making submission of controversy irrevocable is valid.* Section 3 of the statute revising the law in relation to arbitration and awards, and providing that a submission to arbitration shall, unless a contrary intention is expressed, be irrevocable, does not violate any constitutional right.

3. SAME—*arbitration is approved by the courts.* Inasmuch as the arbitration of controversies avoids the formalities, delay and expense of litigation, that method of settlement of disputes is approved and recommended by the courts.

4. SAME—*there must be an existing controversy.* To authorize a submission to arbitration there must be an existing controversy between the parties, but it is not necessary that there be an existing legal cause of action.

5. SAME—*agreement to submit future disputes that may arise under a contract is void.* An agreement to submit to arbitration any disputes that may arise under an executory contract is void as it deprives the parties of their right to resort to the courts, which are provided by the constitution for the redress of grievances and the settlement of disputes.

6. SAME—*statute does not authorize submission of future controversies.* The Arbitrations and Awards act does not authorize any agreement to submit future controversies to arbitration under it, and an agreement circulated among the business men of a city providing that all who sign it thereby agree to submit future controversies to arbitration cannot be enforced, nor can a certain sum stipulated in the agreement as liquidated damages in case of a refusal to submit to arbitration be collected from the party refusing to abide by the agreement.

FARMER, J., dissenting.

APPEAL from the Municipal Court of Chicago; the Hon. HARRY OLSON, Judge, presiding.

HARRY S. MECARTNEY, for appellant.

TOLMAN, SEXTON & CHANDLER, and HOWARD B. BRYANT, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Upon a trial by the court without a jury the municipal court of Chicago rendered judgment in favor of Louis Cocalis, appellee, against Eugene Nazlides, appellant, for $25 liquidated damages for refusal by the appellant to submit to arbitration two controversies between the parties, under an agreement that each would submit to arbitration any controversy that might arise between them or pay $25 damages. Questions of constitutional right being involved, an appeal to this court was allowed and perfected.

In 1922 the Chicago Association of Commerce distributed printed forms of an agreement to submit to arbitration future disputes or controversies which might arise between persons who should sign such papers. The form for such agreement was prefaced with a statement of the object of the agreement, signed by S. J. Whitlock, chairman, and J. Kent Greene, manager, showing such purpose to provide beforehand for the settlement of controversies which might arise in the future and advising that the best time would be before discord was even threatened. It was not required that parties should sign the same agreement nor that they should know what other persons might sign it, but the plan was that any signer could compel any other signer to submit to arbitration any controversy that might arise between them. It was intended that the Association of Commerce should keep an index list of all who should sign agreements

and deposit them with the association. The contract was in the following form:

"The undersigned, contracting with each other and with all others, jointly and severally, that have heretofore contracted, do now or may hereafter contract by executing any other or different instrument containing the same language and bearing the same date (no matter when actually executed) as this instrument, each .in consideration of one dollar and other good and valuable considerations to him, her, it, them, paid, the receipt of which is hereby acknowledged, and in consideration of the mutual and several promises of each and all of the parties, not only to this contract but to all said other contracts containing the same language and bearing the same date, hereby agree with each other, and with all the other parties to all said contracts, that if any one or more controversies growing out of contract shall arise at one or successive times between them or any of them, or any parties to any of said contracts, during the year 1922 or 1923, growing out of any other contract, whether written, verbal, express or implied, now existing or that may be entered into between them or any of said parties, or growing out of the dealings between any of said parties, the same shall be submitted to arbitration from time to time on demand of any such party under the Arbitrations and Awards statute of Illinois and the rules of arbitration of the Chicago Association of Commerce.

"Any party to any such controversy or controversies refusing for the space of ten days after such demand so to submit any such controversy or controversies to arbitration shall be held to have broken this contract, and for so doing shall pay to the other the sum of twenty-five dollars ($25) for each and every controversy so offered to be submitted, as liquidated damages justly incurred through such refusal: *Provided,* such breach of this contract shall not in any way affect the rights of the parties other than to make the one guilty of such breach liable for the payment of said liquidated damages.

"It is understood that from time to time other parties will execute this and other instruments containing the same language. All such instruments shall together be construed as one continuing contract executed for the benefit of all. The names and addresses of all parties signed to any of said instruments may be published for the benefit of all whom it may concern.

"Witness the hands and seals of the parties hereto this fourteenth day of July, 1922."

The appellee signed one of these agreements and the appellant signed another. In August and September, 1922, controversies arose between the appellant and appellee, and

appellee demanded that appellant should submit the controversies to arbitration in accordance with the agreement, which appellant refused to do. Appellee brought this action for the $25 named in the contract, and in his statement of claim set forth a copy of the agreement and the fact that controversies arose and the refusal of the appellant to comply with his contract.

The municipal court refused to hold propositions of law submitted by the appellant that the agreement to submit to arbitration future controversies not existing at the time of its execution was void, and that the promise of the appellant to pay $25 damages for a breach of the void contract was therefore void.

Arbitration by agreement of parties as a method of settling disputes and controversies by substituting an arbitrator or arbitrators for a court proceeding according to the course of the common law was recognized at the common law, and an award might be enforced by an action at law, or in a proper case a party could call upon a court of equity to compel a specific performance of the award. (*Ballance v. Underhill*, 3 Scam. 453.) Specific performance of an agreement to arbitrate a present existing controversy would not be decreed by a court of equity, and until an award was made the authority of the arbitrators was subject to revocation by either party to the submission, except when the reference to arbitrators was by a rule of court. (*Paulsen v. Manske*, 126 Ill. 72; Morse on Arbitration, 230; *People v. Nash*, 111 N. Y. 310.) Section 3 of the statute revising the law in relation to arbitration and awards now provides that a submission to arbitration shall, unless a contrary intention is expressed therein, be irrevocable. That provision does not violate any constitutional right, and the common law rule that either party might revoke a submission at any time before an award was made and take from the arbitrator all power to make a binding award has been

modified in that particular. *White Eagle Laundry Co.* v. *Slawek,* 296 Ill. 240.

Inasmuch as the arbitration of controversies avoids the formalities, delay and expense of litigation in court, the courts, speaking from an economic standpoint, have approved and recommended that method of settlement. (*Gerrish* v. *Ayers,* 3 Scam. 245; *Merritt* v. *Merritt,* 11 Ill. 565; *Haywood* v. *Harmon,* 17 id. 477; *Podolsky* v. *Raskin,* 294 id. 443; *Ballance* v. *Underhill, supra.*) The question, however, to be decided is not whether the courts would advise the appellant to submit his controversies with the appellee to arbitration, but whether he shall be compelled to do it because he signed an agreement that he would. The constitution has created courts for the adjustment of rights, the settlement of controversies and the redress of grievances, with all the necessary powers to enforce their judgments and decrees, and has preserved the right of citizens to invoke their jurisdiction. Parties, generally, in dealing with each other adjust their differences without the intervention of any authority, but if they do not, they may refer any such matter to arbitration or may call upon a court to enforce alleged rights or redress alleged grievances. If there is a submission to arbitration the law has always been that there must be an existing controversy between the parties. It is essential to the very idea of an arbitration that there should have been an antecedent dispute or an existing matter of difference to be adjudicated and determined, so as to conclude the parties as to the matter in issue between them. If there is no matter in dispute there is no question for arbitration, and accordingly it was held in *Norton* v. *Gale,* 95 Ill. 533, where annual rent was to be ascertained by appraisers, their decision was not an arbitration because there was no matter in controversy when the leases were executed; also in *Sebree* v. *Board of Education,* 254 Ill. 438, it was said that an arbitration, in the proper sense of the term, presupposes a controversy or difference to be tried

and decided. This marks the distinction between an arbitration and the determination of some fact in the future upon which a right of action may depend. As said in *Sebree* v. *Board of Education, supra,* terms applicable to either are sometimes used without any clear difference in meaning although there is a plain distinction. There have been some cases in which what was called an arbitration related to the future, but they were not cases of arbitration in the proper sense but only the ascertainment of some fact as a condition precedent to the bringing of a suit. That was the case in *McAuley* v. *Carter,* 22 Ill. 53, where it was held that the final certificate of the assistant superintendent in the construction of a building was a condition to the right to recover in a suit under the contract. There was the same decision in *Coey* v. *Lehman,* 79 Ill. 173, where acceptance by the architect was a condition for payment; and in *Lewis* v. *Montgomery,* 145 Ill. 30, the certificate of an architect was held a condition precedent to a right of recovery. In all those cases the basis of the decisions was that the parties had agreed that a particular kind of evidence of a fact should be required and that they had a right to make such agreement. Similar agreements for the ascertainment of some fact in contracts of insurance have frequently been sustained, but they are not agreements for arbitration in any proper sense. It is also competent in the case of voluntary organizations and societies to require obedience to rules and regulations as a condition of membership and to enforce the same. Members may make valid and binding agreements to submit questions in dispute connected with their membership to arbitration, as provided by the articles of association. It was under that rule that judgments were affirmed in *People* v. *Board of Trade,* 45 Ill. 112, where a member was expelled for refusal to comply with the finding of a tribunal of arbitration, and in *Pitcher* v. *Board of Trade,* 121 Ill. 412, where Pitcher was expelled for an offense against the rules, regulations and by-laws. There

is a clear distinction between an appraisement or valuation or the finding of some fact merely ancillary to a contract, the purpose of which is not to adjudicate a controversy, and an arbitration of a controversy or difference between parties to be tried and decided.

An existing legal cause of action is not necessary to authorize a submission and award, but there must be a dispute or honest difference of opinion concerning some subject in which both are interested. (*Milhollin* v. *Milhollin*, 71 Ind. App. 477.) Even in a case where there is an executory contract, an agreement that any dispute that may arise under it shall be submitted to arbitration, by which the individual citizen renounces his right to resort to the courts provided by the constitution for the redress of grievances and the settlement of disputes, is void. (*Niagara Fire Ins. Co.* v. *Bishop,* 154 Ill. 9; *White Eagle Laundry Co.* v. *Slawek, supra; Guild* v. *Atchison, etc. Railroad Co.* 57 Kan. 70; *March* v. *Eastern Railroad Co.* 40 N. H. 548; *Stephenson* v. *Piscataqua Fire Ins. Co.* 54 Me. 55; *Hurst* v. *Litchfield,* 39 N. Y. 377; *Fox* v. *Mason's Fraternal Accident Ass'n,* 96 Wis. 39; 2 R. C. L. 360.) In *Niagara Fire Ins. Co.* v. *Bishop, supra,* the settled rule was stated, as follows: "A general covenant in a policy of insurance to submit every matter in dispute to arbitration is held to be no bar to a suit for damages and to be invalid as an attempt to oust the courts of their jurisdiction. But an agreement which provides for the determination of amounts or values is lawful and may be made a condition precedent to the right of recovery, either in terms or by necessary implication." In *White Eagle Laundry Co.* v. *Slawek, supra,* the law was again stated quite recently, as follows: "It has been held that an agreement in an executory contract to submit any controversy which may arise under it to arbitration is an effort to divest the courts of their jurisdiction and is invalid because contrary to public policy." In *Meacham* v. *Jamestown, etc. Railroad Co.* 211 N. Y. 346,

the law as held by courts generally, even in the case of an existing executory contract, was applied to a provision in a railroad construction contract that the railroad company's chief engineer should decide all matters in dispute growing out of the contract, that his decision should be final and conclusive, and that each party waived all right of action, suit or other remedy, in law or otherwise, under the contract arising out of it. This was said to be not merely a provision for the determining of certain facts before a right of action should accrue, but that it provided for the adjustment of all questions of difference to the exclusion of jurisdiction of the courts, and the agreement was held void.

This agreement says that the future disputes shall be submitted to arbitration under the arbitrations and awards statute of Illinois. That statute does not authorize any agreement to submit future controversies to arbitration under it. It has not changed the law or enlarged it, but provides that all persons having requisite legal capacity may by an instrument in writing signed by them submit to one or more arbitrators, to be named in the manner indicated by such writing, any controversy existing between them. The statute plainly requires an existing controversy and is permissive to the parties when the controversy exists.

The law as above stated, holding agreements to submit future disputes or controversies to arbitration to be void, has been applied where such agreements have been contained in existing executory contracts as a condition or part of such contracts, and no case has been found like this one, where there has been no existing contract, but an agreement, if there should be one, that any dispute or controversy that might arise under it shall be submitted to arbitration. One of the agreements signed by any person was a proposition to anyone who might sign another that if they should have any business relations they would each waive and forego the right guaranteed by the constitution to resort to a court for the determination of rights. Such a proposition, al-

though accepted by some other person by signing a similar agreement, is unquestionably void.

Before the signing of these papers the appellee had a controversy with the appellant, which the appellee and the appellant, with two others, submitted to arbitration, and the contract of submission, with a lengthy opinion of the arbitrator, was offered in evidence in this case by the appellee; but the fact that the appellant had submitted a previous existing controversy to arbitration is of no importance here, and neither the submission nor the decision of the arbitrator can have any influence on the question whether this agreement was valid.

The agreement was void and the judgment is reversed.

*Judgment reversed.*

Mr. JUSTICE FARMER, dissenting.